UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEBRA BRICE,

        Plaintiff,

v.                                                      Case No. 10-C-711

RICHARD RESCH and KRUEGER INT'L, INC.,

        Defendant.

**DECISION AND ORDER**

      Defendants Richard Resch and Krueger International, Inc. ("KI") have moved to dismiss two of the three claims brought against them by Plaintiff Debra Brice. Brice alleges in her complaint that she and KI entered into an at-will employment relationship when she accepted a job as a government sales specialist. The offer was rescinded and the job was terminated before she even started, however, at the direction of Resch, KI's CEO. Brice alleges that Resch had KI "rescind" or terminate her employment contract because he did not like her "body shape" and thus did not consider her the kind of woman he would be inclined to sexually harass or with whom he would want to have a consensual romantic relationship. (Compl. ¶ 20.) After bringing a case in state court (voluntarily dismissed) and an action before the Wisconsin Equal Rights Division, Brice then brought this federal action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as well as state law claims alleging tortious interference of contract and breach of contract. For the reasons given below, and accepting as true the allegations of the complaint, the motion to dismiss will be granted.

**I. Tortious Interference with Contract**

Defendants argue that the tortious interference claim must be dismissed because Wisconsin courts have held that common law claims are not available when the Wisconsin Fair Employment Act creates a remedy for the same injuries. They argue that the WFEA provides a remedy for sex discrimination in the workplace, and a plaintiff cannot get around it by suing a company CEO in his personal capacity for tortious interference. In *Bourque v. Wausau Hosp. Center,* the court of appeals affirmed the dismissal of state law claims when the WFEA provided a remedy for the complained-of conduct. "We decline to allow Bourque to bypass, under the guise of allegedly separate and distinct statutory and common-law actions, the administrative mechanisms created by the legislature to administer and resolve discriminatory claims. Absent legislative indication to the contrary, the WFEA provides the exclusive remedy for retaliatory discrimination." 145 Wis.2d 589, 599, 427 N.W.2d 433, 437 (Wis. Ct. App. 1988).

Brice concedes the Defendants' premise but argues that the exclusivity of the WFEA applies only to corporate employers, not to individuals like Defendant Resch. But nothing within *Bourque* itself nor any other case suggests its holding would be so limited. After all, corporations can only act through individuals. If such individuals could be sued personally for state law torts, as Brice proposes, then the exclusivity of the WFEA could be side-stepped in every case. Not surprisingly, no court has limited the WFEA's exclusivity in the manner Brice proposes, and in fact a district court in *Andren v. General Fiberglass Supply, Inc.,* 980 F. Supp. 975 (E. D. Wis. 1997), found that it applied to individuals.

But as the Defendants note, the tortious interference claim fails for another reason as well. The typical claim alleging tortious interference with contract involves an allegation that the

2

defendant, a third party, interfered with a contract between a company and its employee. Perhaps the defendant company spread false rumors about the employee and got him fired so that it could hire him itself at a lower wage. Here, however, there is no third-party beneficiary of the alleged tortious interference. Defendant Resch is alleged to have interfered with a contract between his own company and the Plaintiff. He did not want to hire her himself, and he did not act in his own personal capacity but as an officer of the company. The allegation is simply that he gave the order to revoke her job offer with the company.

In *Preston v. Wisconsin Health Fund,* the Seventh Circuit discussed the problems inherent in such claims. 397 F.3d 539 (7th Cir. 2005). The court noted that a key problem with a tortious interference claim involving an at-will employment contract is that such a claim could fundamentally transform the nature of the at-will relationship. As noted above, corporations only act through individuals. If an employee could sue a corporate officer for "interfering" with an at-will contract between herself and the company, such a lawsuit would be nothing more than an *ersatz* breach of contract suit that could undermine the at-will nature of contractual relationship. "[Plaintiff] was an employee at will. That means [Defendant] didn't want him to have a right to sue it for breach of contract if it fired him." *Id.* at 543. Although the Seventh Circuit accepted the possibility that a tortious interference lawsuit could co-exist with an at-will relationship, it would only be if "the employer did not benefit from the defendant's act and that the act was independently tortious, for example as fraud or defamation." *Id.* at 544. There, the court affirmed the dismissal of the tortious interference claim because there was "no evidence that Trojak and Hamilton defamed or defrauded Preston or otherwise committed an independent tort against him (that is, a tort different from the tort of intentional interference with a contract)." *Id.*

3

The same holds true here. There is no suggestion that Resch committed any kind of independent tort against Brice apart from the alleged tortious interference. Allowing such a claim to proceed would effectively turn her at-will job (that is, terminable at will) into an offer terminable only for certain causes. Put another way, the bargain KI and Brice struck allowed KI to terminate their relationship at any time and for any legal reason. If the reason was based on unlawful discrimination, Brice will win her Title VII claim. But allowing other independent claims would fundamentally transform the nature of the contractual relationship.

Brice protests that state court cases preceding *Preston* create a more hospitable terrain for tortious interference cases in the at-will employment context. For example, *Lorenz v. Dreske* involved three individuals' claims that the president of their company interfered with their employment contracts. 62 Wis.2d 273, 287, 214 N.W.2d 753, 760 (Wis. 1974). Specifically, the complaint alleged that the defendant "for his own purposes and contrary to the best interests of the defendant Clinicare Corporation interfered and prevented the plaintiffs from properly performing the provisions of their contracts with Clinicare in various respects including the refusal to issue or permit to be issued payroll checks by Clinicare for work done at the Institute." *Id.* at 285. The court concluded that this stated a claim for tortious interference because the president of the company allegedly caused his company to breach contracts with the plaintiffs by not paying them. "It is only necessary to allege that the act of procuring a breach of contract was done with an improper motive." *Id.* at 287. *See also Mackenzie v. Miller Brewing Company,* 234 Wis.2d 1, 608 N.W.2d 331 (Wis. Ct. App. 2000) (at-will contract can be interfered with if actor had improper motive).

But in *Lorenz* there was an actual breach of contract alleged. The company president was alleged to have diverted funds owed to the plaintiffs, in violation of their contract. *See also Robins*

4

*v. Max Mara, U.S.A., Inc.,* 923 F.Supp. 460, 468 (S.D.N.Y.1996) ("In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party.") (internal quotation marks and citations omitted). Here, by contrast, the company CEO is alleged merely to have ordered the termination of an at-will job. Terminating an at-will position is, by definition, not a breach of contract (as discussed below), and neither can it be said to "interfere" with the contract. Nothing within the offer itself suggested the job could not be terminated upon the CEO's wish or whim – after all, that is the point of an at-will relationship – and thus the CEO did not cause the company to breach any part of the contract. The cases Brice relies upon are not applicable here because they do not involve a company president or CEO exercising the very right that the employment contract grants him.

It is of course true that the "at will" nature of the contract does not foreclose all possibilities that the contract could be tortiously interfered with. If a third party spread false information about Brice that caused her to lose her job, she would have a claim. Such a claim might even exist against Resch, the CEO, if Resch undermined her job performance by defaming her. But a CEO who cancels an at-will employment agreement is not "interfering" with that contract because he is exercising exactly the authority that the contract allows (i.e., termination without good cause). By contrast, in *Lorenz* the company president had no authority to refuse to pay the employees – he was causing the company to breach their employment contracts. Moreover, to say that a CEO can terminate an at-will employee only for causes that are not "improper," *Mackenzie,* 234 Wis.2d at 47, 608 N.W.2d at 350, is simply another way of saying that he must have cause. That is not what the parties bargained for. That is why "more is required than that a discharge be tainted by some private motive, such as greed, personal dislike." *Preston,* 397 F.3d at 544. Here, all that is alleged

is a personal dislike or private motive. Accordingly, the claim will be dismissed for failure to state a claim.

**II. Breach of Contract**

Defendants also argue that the breach of contract claim must be dismissed, largely for the reasons anticipated above. In short, because the employment contract was an at-will contract, the CEO was not in breach of it when he ordered it terminated.

Brice argues, however, that Wisconsin allows a cause of action for breach of an at-will employment contract if the termination violated public policy. "A wrongful discharge is actionable when the termination clearly contravenes the public welfare and gravely violates paramount requirements of public interest." *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 573, 335 N.W.2d 834, 840 (Wis. 1983). But in truth the public policy Brice relies upon is hard to pin down. Her complaint alleges that she was not hired because Resch did not like her body shape and therefore would not be interested in sexually harassing her or having a consensual romantic relationship with her. That is a strange allegation, to be sure, and it does not, on its own, call to mind any trenchant public policy considerations. At least to this point in our history, no governmental body – federal, state or local – has adopted a policy of somehow controlling thoughts of future conduct that may enter a person's mind. Putting Resch's alleged thoughts, plans or hopes to one side, the underlying gist of the allegation is that Resch simply did not personally find Brice attractive. The allegation that a male CEO prefers to hire women he finds attractive cannot give rise to a breach of contract claim under these circumstances, however, because (among other reasons) a termination on that basis simply does not "gravely violate[] paramount requirements of public

6

interest." *Id.* In addition, *Brockmeyer* recognized that the public policy in question "must be evidenced by a constitutional or statutory provision. An employee cannot be fired for refusing to violate the constitution or a statute." *Id.* Here, Brice cites no statutory evidence for a special protection for employees based on their appearance, and she certainly was not fired for refusing to violate any laws.

Practically speaking, accepting Brice's position would lead to a seismic disruption in the at-will employment relationship. For better or worse, "at will" means a boss can fire an employee for a good reason, a bad reason, or for no reason at all. *Brockmeyer,* 113 Wis.2d at 567, 335 N.W.2d at 837. The boss could be having a bad day, or he could simply not like the personality or even the hair color of an otherwise solid employee. One of the justifications for this rule is that any other approach would thrust lawyers and courts into the business of evaluating the wisdom of a myriad of business and personnel decisions made on a daily basis and thereby substantially increase the cost of doing business. Of course, the law carves out protections for minorities, women, religious practices, union activities, and the like, but otherwise we have determined as a society that, absent a contract limiting the grounds for termination, employers (and employees too, for that matter) have a free hand in deciding whether to continue an employment relationship.

Brice's public policy claim would turn this understanding on its head. Because an employer's decision to terminate an at will employee is not subject to judicial review, the decision can be for reasons that can only be described as personal, and such reasons include simply not liking the way an employee looks (so long as such an opinion is not based on prohibited classifications like race). Fashion boutiques, restaurants, modeling agencies, real estate companies, television stations and countless other businesses rely overtly on staffing at least certain positions within their

7

companies based on physical attributes of their employees. Plaintiff was hired as a sales specialist, and it is well known that appearance is particularly important in the sales world.

This is not to say that discrimination on the basis of appearance is praiseworthy or a noble product of our culture. But I do not believe Wisconsin courts would conclude that a CEO who prefers to hire attractive women (in his subjective view) for sales jobs has violated any public policy. To hold otherwise would open a Pandora's box and create a protected class out of millions of at-will employees who could allege they were fired or passed over because they had gained a few pounds over the holidays or developed a pimple. Moreover, public policy is a matter for elected officials in the legislature rather than courts. It is clear from statutes (including Title VII, which Plaintiff herself cites) that legislatures know how to create protected classes of employees, and no legislature has carved out a protection based on physical attractiveness. To do so here would be an ill-advised stretch of judicial power. Accordingly, the breach of contract claim will be dismissed as well.

### III. Conclusion

For the reasons given above, the motion to dismiss is **GRANTED**. The breach of contract and tortious interference claims are **DISMISSED**. The clerk will put the matter on the calendar for a Rule 16 scheduling conference.

**SO ORDERED** this __24th__ day of January, 2011.

      s/ William C. Griesbach
      William C. Griesbach
      United States District Judge